## WESTINGHOUSE ELECTRIC & MFG. CO. v. ROCK ISLAND MFG. CO.

Circuit Court of Appeals, Seventh Circuit.
December 3, 1927.

No. 3828.

Patents ⚙➔328—1,105,230, claims 1, 2, and 3, for improvement in toasters held not infringed.

Patent No. 1,105,230, claims 1, 2, and 3, for improvement in toasters, "comprising a swinging reversing carrier," *held* not infringed by mechanism for reversing slice and producing same result.

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois.

Patent infringement suit by the Westinghouse Electric & Manufacturing Company against the Rock Island Manufacturing Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Victor S. Beam, of New York City, and Wesley G. Carr, of Pittsburgh, Pa., for appellant.

Clarence J. Mehlhope, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. The patent in issue is No. 1,105,230 to Wiltsie, July 28, 1914, for an improvement in toasters. Its validity is conceded. The District Court found noninfringement. Claims 1, 2, and 3 were sued upon. Typical claim 2 is:

"In a toaster, the combination of an upwardly extending heat producing element, and means for supporting the material to be toasted adjacent to the element comprising a swinging reversing carrier moving from and toward the same face of the element to substantially horizontal position when open to permit the sliding of the material to be toasted when open for reversing the face of said material on the carrier."

Toasters having a frame supporting a vertical heating element, with a grid interposed between it and the toast, and having a door or carrier on the opposite side of the toast, hinged to the bottom of the frame, so that the toast may be inserted or removed, and may be manually turned for exposing to the heat the opposite side, were not new. Patent to Ayer, No. 951,765, March 8, 1910. Claim 2 describes the means for supporting the toast as "comprising a swinging reversing carrier," which, when open, will be substantially horizontal, and will permit the sliding of the toast for reversing its face on the carrier. It is evident from the claim that it is the carrier itself which comprises these elements, and brings about a reversal of the toast, and examination of the specification and drawings makes it evident that the carrier alone was relied upon to bring about this function. The carrier is shown as having at its lower end a substantially inward extending right-angled bend or shelf of about the width of the piece of toast, the edge of this shelf being hinged to the frame, so that, when the carrier is in position for toasting, the bottom of the slice rests upon this shelf, and when the carrier is dropped this shelf moves downward, thereby removing the support from the bottom of the toast, causing it to drop down and forward along the then somewhat downwardly sloping carrier or door, so that, when it successfully makes the slide, it lies on the carrier with toasted face downward, being prevented from sliding off the carrier by an upward or inward bending ledge on the upper side of the carrier, and when the carrier is again raised the opposite side of the slice is presented to the heat, resting upon the lower bend or shelf of the carrier, which is thus again in position to hold it.

The concept was not so much the reversing of the toast as the means by which it could be brought about. Ayer's device would not reverse it, even though his carrier were dropped below the horizontal position. He would merely have dropped the toast, without reversing it. It required some mechanism at the bottom of the toast to start it sliding, in order to effect the reversal. Wiltsie's conception, as he described and pre-empted it in these claims, was to have his carrier so constructed that its integral element supporting the slice would be removed from under it by the act of dropping the carrier, whereupon

the toast would drop downward and slide forward.

The alleged infringing device shows a radically different method for bringing about the dropping and sliding forward of the slice. It has the frame, heating element, grids, and carriers hinged at bottom of frame, all of which are old. But the support for the toast is not in the carrier at all, but on the bottom of the frame, and but for some actuating mechanism the toast might remain in the frame until doomsday after the carrier was dropped.

If, after dropping his carrier, appellee had employed, say, a knife blade to push the toast forward at the bottom and cause it to slide forward on the open carrier, thus effecting the reversal, it could not well be contended that this would transgress the patent. Now, instead of employing such an expedient as a knife blade to move the toast forward, appellee uses a device to push forward the wires composing his grids interposed between the toast and the heating element. These grids are hinged or pivoted to the inner top of the frame, with their lower ends loosely inserted in forwardly extending slots, so that they normally serve as a grid while the toast is in position for heating. Back of these loosely hanging grid wires there is a bail, which, when actuated, moves the wires forward, effecting a sort of kicking movement, which pushes the bottom of the toast off the frame, and starts it sliding down the somewhat inclined carrier, and, if all works well, thus effecting the reversal when the carrier is again raised—the grid wires resuming their normal position.

It is true that the movement of the bail is brought about by its connection with the carrier, so that when the carrier is lowered the bail moves forward, and when raised it again moves backward, permitting the suspended wires to resume their original position. Appellant insists that this is but a reversal of parts, but we cannot so view it. It may be said that it is doing the same thing, but surely it is not doing it in the same way. Wiltsie's operation is through gravity alone, by suddenly withdrawing the toast support, which is part of the carrier. In appellee's device there is interposed a separate mechanism, which drives the toast away from its support. Both methods may reverse the slice, and both may produce good toast; and, while the result in each may be the same, the means for accomplishing it are quite different.

While it may be that Witlsie is entitled to a fair range of equivalents, we do not think

one of them is a device wherein the means which support the toast are not a part of the carrier itself. We are satisfied that the claims in issue do not read upon appellee's device, and that appellee does not infringe the Wiltsie patent.

The decree is affirmed.